FILED
2018 Aug-03 AM 11:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> YEAGER PAINTING, LLC, ) <br> CHRIS YEAGER, and WILFREDO ) <br> HERNANDEZ, a/k/a WILFREDO ) <br> ROMAN HERNANDEZ-ZAVALA, ) <br> ) <br> Defendants. ) | Case No. 2:16-cv-02061-JEO |

# **MEMORANDUM OPINION[1]**

The court has before it the January 10, 2018 motion for summary judgment filed by Plaintiff Evanston Insurance Company against Defendants Chris Yeager and Yeager Painting LLC.[2] (Doc. 38). Pursuant to the court's initial order (Doc. 28) and the February 7, 2018 extension (Doc. 41), the motion was under submission as of March 1, 2018. After consideration of the briefs, evidence and applicable case law, the court finds that the motion is due to be granted for the following reasons.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 27).

[2] Plaintiff did not move for summary judgment against Defendant Wilfredo Hernandez-Zavala. (*See* Doc. 38).

# I. BACKGROUND

Chris Yeager formed Yeager Painting, LLC ("Yeager Painting") in 2000. (Doc. 38-2 ("Yeager Dep.") at 7-8).[3] Yeager Painting is in the business of sandblasting and painting. (*Id*. at 7). In September 2012, Yeager formed Yeager Industrial Painting, LLC ("Yeager Industrial"). (*Id*. at 9-11; Doc. 38-2 at 13-19). Although Yeager Industrial did not exist until September 2012, Yeager Painting sometimes used the name Yeager Industrial Painting. (Yeager Dep. at 21-23, 27-28).

Essex Insurance Company issued a commercial general liability policy to Yeager Painting for the policy period March 2, 2012 to March 2, 2013. (Doc. 38-1 ("Roach Aff.") ¶ 4; Doc. 38-1 at 5-63). Essex merged into Evanston effective June 30, 2016, and as a result of the merger, Essex ceased to exist and Evanston became the insurer under the policy. (Roach Aff. ¶¶ 2, 5).

## A. The Accident

In March 2012, the City of Pelham, Alabama, hired Walker Brothers Ltd. to sandblast water tanks. (Yeager Dep. at 17; Doc. 38-3 at 1-4). Walker Brothers

---

[3] All evidentiary citations refer to the document and page number provided by CM/ECF, the court's electronic document filing system, except for citations to depositions, which refer to the page number provided on the deposition transcript, and affidavits, which refer to the paragraph number in the affidavit.

subcontracted the work to Yeager Painting.[4] (Yeager Dep. at 17). Yeager Painting[5] then subcontracted the work to Delgado Painting. (*Id*. at 22-23; Doc. 38-2 at 24-33). There is no evidence Yeager Painting required, secured, or maintained any certificate of insurance confirming Delgado Painting carried commercial general liability insurance coverage with limits at least equal to the limits of the Evanston policy and naming Yeager Painting as an additional insured.[6]

Wilfredo Hernandez, an employee of Delgado Painting, was injured on May 19, 2012, while working on the Pelham water tanks. (Doc. 38-7 at 4). Hernandez was using "a man-lift basket . . . that uses a winch and cable system to travel up and down the water tank/structure" to sandblast the tank in preparation for paint. (*Id*.). The basket was anchored to the top of the water tank, and when Hernandez was approximately 25-30 feet high and in the stop position, the breaking system of the winch allegedly failed and Hernandez fell to the ground. (*Id*. at 4-5). As a result of the fall, Hernandez alleges he suffered severe injuries including, but not limited to, the loss of teeth, traumatic damage to the right mandible, multiple

---

[4] There is no evidence in the record of a written agreement between Yeager Painting and Walker Brothers. Yeager testified sometimes the agreements were made by a handshake. (Yeager Dep. at 19).

[5] The undated subcontractor agreement states it is between Delgado Painting and Yeager Industrial Painting. (Doc. 38-2 at 24). Yeager testified the agreement was made "before the job started" in March 2012. (Yeager Dep. at 22-23). Although Yeager Industrial Painting did not exist until September 2012, Yeager testified he was using the Yeager Industrial name for his Yeager Painting business. (*Id*. at 21-28).

[6] Yeager testified he "had a certificate of insurance from" Delgado, but he did not know what type of insurance it was. (Yeager Dep. at 24).

3

fractures to his jaw, and damage to his left arm resulting in the loss of mobility. (*Id.* at 5).

## B. Accident Reported to Evanston and Evanston's Denial of Coverage

At some point after the accident, Evanston "received notice of a claim presented by Wilfredo Hernandez for injuries allegedly sustained while working on a bucket truck allegedly owned by Yeager Painting LLC." (Doc. 38-9 at 1; *see also* 38-1 at 52). It is unclear who notified Evanston of the accident. (*Id.*). On January 30, 2013, Markel Service Inc., Evanston's claims service manager, sent Yeager and Yeager Painting a reservation of rights letter and hired an adjusting firm to investigate the claim. (Doc. 38-1 at 52). After an investigation, on April 10, 2013, in a letter addressed to Chris Yeager of Yeager Painting, Markel, on behalf of Evanston, denied coverage "due to the fact that the claim arises out of an injury sustained to a sub-contractor which is excluded by the policy." (*Id.*). The letter concluded by instructing Yeager to contact his attorney regarding the matter, but to immediately contact Evanston if anything changed or of he had additional information regarding the claim. (*Id.*).

## C. The Underlying Lawsuit

On March 12, 2014, Hernandez filed a complaint in the Circuit Court of Shelby County, Alabama, against Yeager Industrial, Walker Brothers, and Delgado Painting. (Doc. 38-8). The complaint asserted the following claims against all

4

three defendants: (1) claim for worker's compensation benefits under the Alabama Worker's Compensation Act; (2) claim under the Alabama Employer's Liability Act; (3) claim entitled "unsafe work environment" alleging a duty under Alabama Code § 25-5-1 to furnish reasonably safe employment; (4) negligence and wantonness; (5) negligent and/or wanton hiring, training, retention and/or supervision; and (6) spoliation of evidence/wanton destruction of evidence. (*Id*.).

Almost two years later, on February 16, 2016, Hernandez amended his complaint and added Yeager Painting and Chris Yeager as defendants. (Doc. 38-7). The amended complaint contained the same claims as the original complaint and asserted the claims against all defendants. (*Id*.). Yeager Painting and Yeager were served with the amended complaint on February 27, 2016 and February 22, 2016, respectively. (Doc. 38-10 at 5-6).

On September 16, 2016, seven months after being served with the amended complaint, an attorney for Yeager Painting and Yeager sent a letter to Evanston enclosing the amended complaint and demanding "defense and indemnity" under the policy. (Doc. 38-1 at 49). After receipt of this letter, Evanston made repeated attempts to contact Yeager to obtain information regarding Hernandez's lawsuit, but Yeager did not respond or cooperate in the investigation. (*Id*. at 54). Based on the allegations in the amended complaint, Evanston agreed to defend Yeager and

5

Yeager Painting against all claims in the amended complaint other than the worker's compensation claim under a full reservation of rights. (*Id*. at 52).

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The court construes the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable

inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in favor of the non-moving party when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. V. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

### III. DISCUSSION

Before the court addresses the merits of the summary judgment motion, it notes that Yeager and Yeager Painting concede Evanston does not owe coverage for Hernandez's worker's compensation claim or the claim under the Alabama Employer's Liability Act. (Doc. 42 at 4 ¶ 10). Additionally, Yeager and Yeager Painting failed to respond to Plaintiff's arguments regarding Hernandez's claim for spoliation, punitive damages, or Evanston's argument that even if it owes coverage, coverage is limited to $50,000, including costs of investigation and defense, because Yeager Painting failed to obtain a certificate of insurance from its

7

subcontractor, Delgado Painting. "Where a non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." *See Powell v. Am. Remediation & Envtl., Inc.*, 61 F. Supp. 3d 1244, 1252, n.9 (S.D. Ala. 2014). Because Yeager and Yeager Painting did not respond to Plaintiff's arguments regarding these claims, the court concludes they are abandoned and Plaintiff is entitled to summary judgment as to these claims and the coverage limitation issue.

Liability insurance policies impose two separate duties on the insurer: (1) a duty to defend and (2) a duty to indemnify. *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) (citing *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 791-92 (Ala. 2002)).[7] While ordinarily the two duties must be analyzed separately, because the duty to defend is broader, no duty to indemnify exists where there is no duty to defend. *Tanner*, 874 So. 2d at 1063, 1066. For this reason, the natural analysis begins with Evanston's duty to defend.

---

[7] "In determining which law applies [to the interpretation of an insurance policy], a federal district court sitting in diversity must apply the choice of law rules of the forum state." *Clanton v. Inter. Net Global, L.L.C.,* 435 F.3d 1319, 1323 (11th Cir. 2005) (quoting *Trumpet Vine lnvs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996)). Absent a contractual provision specifying which law governs, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed. *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007). It is undisputed the policy was entered into in Alabama and Alabama law applies to its interpretation.

"Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (quotations and citations omitted). "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id*. To determine whether a claim is covered by the policy, a court must initially engage in a three step inquiry: (1) the insured must show first that the claim is covered under the policy's initial grant of coverage; (2) the insurer may then show that a policy exclusion bars coverage; and (3) the insured may thereafter establish that the excluded claim falls under an exception to the exclusion. *Town & Country Prop., L.L.C v. Amerisure Ins. Co.*, 111 So. 3d 699, 703 (Ala. 2011); *Ala. Hosp. Ass'n Trust v. Mut. Assur. Soc. of Am.*, 538 So. 2d 1209, 1216 (Ala.1989). If the allegations in the complaint do not constitute a covered accident or occurrence, the court may look to admissible evidence to establish a duty to defend. *Hartford*, 928 So. 2d at 1009-10. Further, "[i]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Id*. (quoting

*Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 668 (Ala. 1995)). Finally, if the allegations in the complaint or the evidence presented include both covered and uncovered acts, the insurer must defend at least the claims covered by the policy. *Id*. (citing *Blackburn*, 667 So. 2d at 670).

### A. Timely Notice of an Occurrence or Suit

Evanston contends it does not have a duty to defend or indemnify Yeager and Yeager Painting because they breached the policy by failing to provide timely notice of a potential occurrence or lawsuit. (Doc. 38 at 24-28). Compliance with the notice requirements in an insurance policy is a condition precedent to recovery. *Employers Mut. Cas. Co. v. Smith Const. & Develp., LLC*, 949 F. Supp. 2d 1159, 1169 (N.D. Ala. 2013) (citing *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983)).

The policy provides, in pertinent part, as follows:

> 2. Duties in the Event of an Occurrence, Offense, Claim or Suit
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
>
> . . .
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
>> (1) Immediately record the specifics of the claim or "suit" and the date received; and

>> (2) Notify us as soon as possible.
>
>> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>
>> (1) Immediately send us copies or any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

(Doc. 38-1 at 25-26).

The notice provisions under the contract set out two separate notice requirements. The first obligates Yeager Painting to notify Evanston "as soon as practicable" about an "occurrence" that "may result in a claim." (Doc. 38-1 at 25). The second imposes a duty on Yeager Painting to notify Evanston "as soon as practicable" after a lawsuit has been filed. (*Id*. at 26).

Under Alabama law, the phrase "as soon as practicable" is construed to require notice "within a reasonable time in view of the facts and circumstances of the case." *Pharr*, 429 So. 2d at 1019. The court should consider only two factors "in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reason for the delay." *Southern Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882-83 (Ala. 1976). Prejudice to the insurer is not a factor. *Id*. "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a

11

delay in giving notice is a question of fact for the jury." *Id*. at 882 (citation omitted). That being said, however, where the insured unduly delays in giving notice and "fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the [c]ourt should as a matter of law hold that there has been a breach of the condition as to notice." *Southern Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882-83 (Ala. 1976); *see also Pharr*, 429 So. 2d at 1019-20.

The accident occurred on May 19, 2012. (Doc. 38-7 at 4). There is no evidence in the record as to the exact date Yeager Painting notified Evanston of the accident.[8] Although there is evidence that Markel sent a reservations of rights letter to Yeager Painting and opened an investigation on January 30, 2013, (Doc. 38-1 at 52), this letter does not give the court any idea as to when Yeager Painting actually notified Evanston of the accident. Without such evidence, the court cannot make a decision as to whether Yeager Painting's initial notification was "as soon as practicable" as required by the policy.

Regardless of whether Yeager Painting's first notification was timely, the second was not. Hernandez amended his lawsuit to include Yeager and Yeager Painting on February 16, 2016, and both were served with the amended complaint by February 27, 2016. (Doc. 38-7; Doc 38-10 at 5-6). Yeager Painting waited

---

[8] Although it is not entirely clear, it seems that it may have been Hernandez's attorney who notified Evanston about the accident. (Doc. 38-9 at 1, 5).

until September 16, 2016, to forward the amended complaint to Evanston. (Doc. 38-1 at 49). The approximate seven month delay between the amendment to the complaint and the demand letter to Evanston is unreasonable as a matter of law under the circumstances. *See Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 535-36 (Ala. 2008) (five month delay without explanation or justification is unreasonable); *Thomas*, 334 So. 2d at 882-83 (six month delay unreasonable in light of insured's justifications).

Yeager and Yeager Painting do not offer a legitimate excuse for the delay. Instead, Yeager points to Evanston's April 10, 2013 letter denying coverage after it was notified about the accident. (Doc. 42 at 8-9). That letter concluded by stating Evanston "must disclaim coverage to you for this loss and will not be handling this claim on your behalf. We will not be able to pay any claims nor provide a defense or respond to any awards that might be rendered. You should contact your own attorney to address these matters." (Doc. 38-9 at 5). Yeager and Yeager Painting contend they did not notify Evanston because Yeager could not find a lawyer to represent them. (Doc. 42 at 8-9; Doc. 38-5 at 1).

This excuse is not objectively reasonable. Yeager and Yeager Painting did not need an attorney to notify Evanston of the lawsuit against them. This is especially true when two paragraphs later, the letter states for Yeager to "contact us immediately" if the information is incorrect or there is any additional

13

information which may impact coverage or if he has any questions to please contact them at the given phone number. (Doc. 38-9 at 5). The letter certainly does not imply only an attorney could contact Evanston.

Because Yeager and Yeager Painting offer no reasonable excuse for their seven month delay in notifying Evanston of the amended complaint naming them as defendants, Evanston's obligations under the policy were not triggered. Yeager and Yeager Painting did not satisfy a condition precedent to coverage, and, as such, Evanston does not have a duty to defend or to indemnify Yeager or Yeager Painting under the policy. Therefore, Evanston's motion for summary judgment is due to be granted.

### B. The Injuries to Subcontractor Employees Exclusion

Even if Yeager did timely notify Evanston, Evanston does not have a duty to defend or indemnify under the policy because the injuries to subcontractor employees exclusion applies. The policy states as follows:

1. The coverage under this policy does not apply to "bodily injury" . . . or any injury, loss or damage:

> . . .
>
> (e) Arising out of, caused or contributed to by any injury sustained by any contractor, self-employed contractor, and/or subcontractor, or an "employee", "leased worker", "contract worker", "temporary worker" or "volunteer worker" of same hired by you or on your behalf. The exclusion applies to any obligation to share damages with or

14

> repay someone else who must pay damages because of the injury, as well as liability assumed under any "insured contract."

(Doc. 38-1 at 39).

Walker Brothers hired Yeager Painting to work on the water tank job. (Yeager Dep. at 17-18). Yeager Painting subcontracted this work to Delgado Painting.[9] (*Id*. at 21-23). It is undisputed Hernandez was employed by Delgado Painting at the time of the accident. (*Id*. at 38; Doc. 42 at 2 ¶ 4). As such, Hernandez was an employee of a subcontractor of Yeager Painting, and the exclusion bars coverage.[10] Therefore, Evanston does not have a duty to defend or indemnify Yeager or Yeager Painting in the underlying lawsuit.

---

[9] The court rejects Yeager and Yeager Painting's argument that there is a question of fact as to when the subcontractor agreement was signed. (*See* Doc. 42 at 6-7). Although undated, Yeager testified the subcontractor agreement "would have been signed before the job started." (Yeager Dep. at 23). Additionally, Yeager's answers to Evanston's interrogatories also demonstrate the subcontractor agreement was in place when the accident occurred. (*See* Doc. 38-4 at 2; Doc. 38-5 at 6; Doc. 38-2 at 23-24).

[10] Yeager and Yeager Painting also argue in the summary section of the responsive brief that there is a question of material fact as to whether the contract was between Delgado Painting and Yeager Industrial Painting or Yeager Painting LLC. (Doc. 42 at 10). They argue that "[i]f it is determined by the trier of fact that the subcontract is not on behalf of Chris Yeager and Yeager Painting, LLC, then Hernandez would not be classified as a worker for a subcontractor of the insured," and the claim would not be excluded. (*Id*.). The problem with this argument is that there is not a factual dispute on this issue. The record is clear that at the time of the incident, Yeager Industrial Painting did not exist. It was formed on September 4, 2012, almost five months after the accident. (Yeager Dep. at 9-12; Doc. 38-2 at 13-19). Additionally, under the relevant policy (doc. 38-1 at 1), Yeager Painting, not Yeager or Yeager Industrial Painting, is the insured.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Evanston Insurance Company is entitled to judgment as a matter of law on all the claims asserted against Defendants Chris Yeager and Yeager Painting, LLC. As such, Plaintiff's motion for summary judgment (Doc. 38) is due to be granted. A separate order will be entered.

**DATED** this 3rd day of August, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge